### MARTIN TRACTOR COMPANY et al., Plaintiffs,

### v.

### FEDERAL ELECTION COMMISSION et al., Defendants.

### Civ. A. No. 78–1259.

United States District Court,
District of Columbia,
Civil Division.

Nov. 8, 1978.

---

Edward A. McCabe, John G. DeGooyer, Mark Sullivan, III, Anthony J. Thompson, Hamel, Park, McCabe & Saunders, Washington, D. C., for plaintiffs.

William C. Oldaker, Charles N. Steele, Kathleen Imig Perkins, Federal Election Commission, Washington, D. C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

Three corporations, their political action committees, executives of two of them and a non-salaried employee of one of them here sue the Federal Election Commission and its members for a declaratory judgment that one section of the Federal Election Campaign Act of 1971, as amended in 1976, 2 U.S.C. § 431 *et seq.*, (the Act) violates rights guaranteed to them by the First and Fifth Amendments of the Constitution. The alleged violations result from a threat, apparent on the face of § 441b of the Act, that if corporate and executive plaintiffs sought voluntary contributions to a political fund from hourly employees orally and in writing, on or off the corporation's premises, more than twice a year, they could be punished by fine and imprisonment. This threat has allegedly caused these plaintiffs to limit their exercise of their constitutional right to seek such voluntary contributions by communicating with hourly employees and concurrently impinged upon the right of the hourly employee plaintiff to receive such communication. Plaintiffs also seek injunctive relief to prevent enforcement of § 441b and the regulations pursuant thereto.

Defendants have moved to dismiss this complaint for lack of jurisdiction over the subject matter or for failure to state a claim upon which relief can be granted. Recognizing that the spirit of the Act requires prompt Court attention to constitutional questions raised about it,[1] and also recognizing the possible need of the parties for prompt action by this Court in order to expedite appeal from whatever decision it might make, the defendants' motion to dismiss was granted on October 18, 1978, with an indication that an explanatory memorandum would be forthcoming promptly.

The decision to dismiss the complaint was based upon the Court's conclusion, first,

---

1. *See* 2 U.S.C. § 437h(a), discussed further below.

that plaintiffs may not invoke the statutory provision for judicial review provided in 2 U.S.C. § 437h and, secondly, that even if they qualified under that section, they presented as yet no case or controversy sufficiently ripe to invoke the declaratory powers of a federal court. A brief outline of the statutory scheme for enforcement written into the Act by Congress is necessary background to those conclusions.

In general the statute contemplates that defendants should investigate any complaint about violation of the Act in confidence and allow any person there charged a reasonable opportunity to respond; 2 U.S.C. § 437g. The Court accepts as binding upon the FEC its statement that a party may raise any defenses or arguments during such proceedings, including constitutional ones; Brief at 8. If the defendants later determine that there is reasonable cause to believe that a violation either has occurred or is threatened, they must attempt informal resolution of that alleged or threatened violation for at least thirty days. If the informal resolution fails, defendants may file a civil enforcement action in a federal district court; if they find that a knowing and willful violation has occurred, the defendants may refer the matter to the Attorney General who may or may not initiate criminal prosecution.

## II.

■ Plaintiffs claim that they are entitled to invoke the Court's jurisdiction under a unique provision of the Act which authorizes particular persons to sue "for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act." 2 U.S.C. § 437h(a). Section 437h(a) had the purpose and effect of expediting judicial review of questions raised in Congress about the constitutionality of particular provisions of the Act so that these questions could be authoritatively resolved before the Presidential Election of 1976. *See* Remarks of Senator James Buckley, 119 Cong.Rec. S5707 (daily ed. April 10, 1974); *Buckley v. Valeo,* 424 U.S. 1, 11–12, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

Plaintiffs do not suggest that § 441b here at issue was among the provisions whose constitutionality was questioned in Congress. In any event, and crucial here, access to court pursuant to § 437h(a) was by its terms limited to "the Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President of the United States."

Neither the corporate plaintiffs nor the political action committees are in the category of entities or individuals entitled to invoke the Court's jurisdiction under § 437h(a). The decision to dismiss their complaint seems therefore to be *a fortiori.*

A closer question is raised with respect to the executive plaintiffs and the hourly employee plaintiff. The complaint alleges that they are eligible voters; the complaint puts at issue, however, not their rights as voters, but rather the constitutionality of the Act's provisions relating to communications between a corporation and its employees about voluntary contributions. Thus, as defendants persuasively contend, the individual plaintiffs do not sue in their individual capacities to protect their individual rights to vote or even to make contributions. They sue to vindicate a claimed right of their corporate employer to influence its employees (including one of the plaintiffs) to make voluntary political contributions. While the question is not free from doubt, the Court has concluded that this kind of derivative right was not the constitutional right of "an individual eligible to vote" which Congress considered "appropriate" for vindication in a special declaratory judgment action under § 437h, particularly where, under the statutory scheme there is an alternative process for resolution of the substantive issue in the context of a particular transaction, *infra.*

## III.

■ The result would be no different if the Court assumed, contrary to the foregoing conclusion, that plaintiffs could qualify under § 437h. That section, while it may confer standing on certain classes, cannot

by itself create a justiciable controversy. All actions brought under the statutory provisions for judicial review are subject to the requirements of "case and controversy" and "ripeness." *See United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *Muskrat v. United States*, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911). Whether required by Article III of the Constitution or in part an expression of the discretion inherent in equity and declaratory judgment jurisdiction, these restrictions upon the jurisdiction of the federal courts are well established. Under the facts of this case, the Court concludes that there is at present no case or controversy sufficiently ripe for declaratory action. Plaintiffs merely allege that they communicated more freely with employees about contributions before the Act became law and desire to resume the practice and would do so but for the Act. They have not, however, advised defendants of their desire to communicate with their employees differently from the times and manner prescribed by law, nor sought any ruling by defendants to accommodate that desire. Neither have defendants taken any steps to invoke the statutory enforcement procedures. Where then is the case or controversy?

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) establishes a test for determining whether action taken by an agency has created a sufficiently "ripe" controversy to permit granting of declaratory or injunctive relief. The challenge there was to a final action of the Federal Trade Commission in approving regulations which required drug manufacturers to print the "established name" of a drug in a specified typeface on any label or printed material, whenever it printed the "proprietary name" of that drug.

Noting that the rationale of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties," the Court set forth a twofold test involving the balancing of "the fitness of the issues for judicial decision" and the "hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515.

As to the first factor, the Court noted that the issue for review was a "purely legal one: whether the statute was properly construed by the Commissioner to require the established name of the drug to be used every time the proprietary name is employed." *Id.* In contrast in this case factual issues which have not yet been developed are central to evaluating the constitutionality of the challenged provisions. For example, whatever the First Amendment rights of corporations, *see First National Bank v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), they are not without limits and have been long subject to regulation in the context of protecting employees from pressure from employers. *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). The balancing of the interests of a corporation and its employees (as well as the rights of others in society which are sought to be protected by the provisions of the Act challenged here) requires a factual record. Such a record may be based upon actual conduct of the corporation since the provision was enacted, which conduct the Commission challenges, or upon a threat of such conduct sufficiently definite so that the Commission can determine whether it would violate the Act. Only such a record would permit a court confidently to evaluate, among other relevant factors, the extent to which the conduct resembles speech activity or nonspeech activity, the extent of the pressures the conduct exerts upon employees or others, and whether the corporation could accomplish its legitimate objectives by alternative means consistent with the statute.[2]

---

2. *See* Scarpf, "Judicial Review and the Political Question: A Functional Analysis," 75 *Yale L.J.* 517, 531 (1966): "[T]he Court [in *United Public* *Workers v. Mitchell, supra*] may well have regarded the constitutional balance between the political rights of civil servants and the

In considering the fitness for judicial review, the *Abbott* Court also noted that there was no claim that further agency action would be contemplated. The Court found the regulations at issue to be "final agency action" within the meaning of 5 U.S.C. § 704. The ruling was "quite clearly definitive" with "no hint that this regulation is informal . . . or only the ruling of a subordinate official . . . ." *Id.*, 387 U.S. at 151, 87 S.Ct. at 1517. Here by contrast plaintiffs as of yet challenge no agency determination that their conduct violates or would violate the Act. The Court is required not only to speculate about the exact nature of plaintiffs' conduct, but also about whether in fact the FEC would find that conduct to violate the Act.

Turning to the second factor, the hardship of withholding court consideration until a later time, the *Abbott* Court noted that compliance would require petitioners to "change all their labels, advertisements, and promotional materials . . . and . . . invest heavily in new printing type and new supplies. The alternative to compliance . . . may be even more costly. That course would risk serious criminal and civil penalties . . . To require [plaintiffs] to challenge these regulations only as a defense to an action brought by the Government might harm them severely and unnecessarily." *Id.* at 152, 153, 87 S.Ct. at 1517.

By contrast, plaintiffs here face no Hobson's choice between costly compliance or the risk of serious criminal or civil penalties. Plaintiffs need not even engage in the conduct whose legality concerns them. There is no showing that they could not apply for and attempt to negotiate a ruling which would permit them safely to accomplish their objectives consistently with the Act. Moreover, the enforcement procedures of the Act may be triggered either by

actual conduct or a genuine threat thereof. Even if they engage in such conduct, however, the enforcement procedure which is yet to be invoked contemplates mandatory conciliation before legal action may be taken. After conciliation has failed, both the conduct to be reviewed and the FEC's position with respect to that conduct would be far more concrete and susceptible to judicial scrutiny through a declaratory action.

To summarize the application of the *Abbott* test, then, the Court concludes, first, that the issue framed by plaintiffs is not readily amenable to judicial review, being uncertain as to both conduct and legal consequences and, secondly, that the harm in delaying review is minimal since plaintiffs have yet to take the relatively costless steps which would permit an initial determination of the legality of their intended conduct.

In the course of reaching these conclusions, the Court has also considered whether, in a case involving First Amendment rights which requires a sensitivity to "chilling effects," such effects may create a ripe controversy at an earlier stage than in a case not involving First Amendment rights; *cf. Gardner v. Toilet Goods Association*, 387 U.S. 167, 187, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967) ("Where personal status or liberties are involved, the courts may well insist upon a considerable ease of challenging administrative order or regulations"). Although plaintiffs allege they did engage in solicitation which they have ceased since enactment of the Act, in light of the enforcement-cum-conciliation provisions of the statute and the minimal cost of triggering those provisions, any chilling effect is at present highly subjective and, as the Court concluded in *Laird v. Tatum*, 408 U.S. 1, 13–15, 92 S.Ct. 2318, 2326, 33 L.Ed.2d 154 (1972), "not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."[3]

legitimate public interest in a neutral civil service as an extremely close one, depending very much upon the actual scope of enforcement and upon the concrete nature of the activities against which sanctions were to be applied."

3. There is no allegation here that plaintiff has sought through the enforcement procedures or

otherwise to clear its intended conduct with the Commission and that the Commission has refused either to invoke those procedures or give informal approval. Use of the potential threat of those procedures as a "Sword of Damocles" might present a different case.

The conclusion that there is no controversy sufficiently ripe to invoke declaratory relief is further supported by *United Public Workers v. Mitchell, supra,* which itself involved First Amendment rights. There plaintiffs challenged provisions of the Hatch Act which forbade their participating in political campaign activities. The Court found it inadequate merely to "declare a desire to act contrary to the rule against political activity but not that the rule has been violated." *Id.,* 330 U.S. at 88, 67 S.Ct. at 563. "No threat of interference by the [Civil Service] Commission with rights of these appellants appears beyond that implied by the existence of the law and the regulations." *Id.* at 91, 67 S.Ct. at 565. Justice Douglas' dissent in that case noted that the appellants' alternative of violating the rule would result in the loss of jobs, seniority and benefits; as noted above, by contrast, plaintiffs will suffer little harm, if any, should they be required to "ripen" their claims before seeking judicial review.

It is for these reasons that the Court granted defendants' motion to dismiss.