689 F.2d 1006
 ATHENS LUMBER COMPANY, INCORPORATED, John P. Bondurant,
Plaintiffs-Appellants,
v.
FEDERAL ELECTION COMMISSION and William F. Smith, in his
official capacity as Attorney General of the
United States, Defendants-Appellees.
 No. 82-8102.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 22, 1982.
Opinion of Rehearing Feb. 7, 1983.
 
 Emmet J. Bondurant, Atlanta, Ga., for plaintiffs-appellants.
 John B. Harris, Jr., William C. Harris, Macon, Ga., for amicus curiae common cause.
 Bernard E. Namie, Asst. U. S. Atty., Macon, Ga., Charles N. Steele, Gen. Counsel, Richard B. Bader, Carolyn U. Oliphant, Jeffrey H. Bowman, Federal Election Com'n, Washington, D. C., Craig C. Donsanto, Dir., Election Crimes Branch, Public Integrity Sec., Crim. Div., Dept. of Justice, Washington, D. C., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before HILL and CLARK, Circuit Judges, and SCOTT*, District Judge.
 JAMES C. HILL, Circuit Judge:
 
 
 1
 Appellant Athens Lumber Co. and its President, John P. Bondurant, challenge the constitutionality of a 2 U.S.C. § 441b(a)[1] of the Federal Election Campaign Act (FECA) insofar as it prohibits a corporation from making direct political contributions and expenditures in a federal election. They ask that we certify the issues raised by their complaint to the United States Court of Appeals for the Eleventh Circuit en banc pursuant to the expedited procedures provided in 2 U.S.C. § 437h. The district court, 531 F.Supp. 756, refused such certification and dismissed appellants' claim for want of Article III jurisdiction. We reverse, and find that both Athens and Bondurant have presented justiciable claims. We hold further that, although Athens is not a proper plaintiff to invoke section 437h expedited review, Bondurant is a proper plaintiff, and also has standing to raise, vicariously, those issues relating to Athens. Thus, we certify certain constitutional challenges raised by appellants to the court of appeals en banc.
 
 
 2
 * Athens Lumber Co. ("Athens") is a Georgia corporation engaged in the manufacture of architectural millwork and the sale of building materials. In July 1981, the company's six shareholders unanimously passed a resolution authorizing the President of Athens, John P. Bondurant, to spend $10,000 on federal election campaigns. The resolution provides that the money is to come directly from corporate assets and is to be used for contributions of no greater than $100 to candidates sympathetic to corporate interests. In addition, the shareholders authorized Bondurant to spend 50% of the allocated funds for politically oriented bill inserts as well as for newspaper, radio, and television advertisements supporting appropriate candidates. Recognizing that the proposed expenditures and contributions would violate 2 U.S.C. § 441b(a) of the FECA, the resolution provides further that no expenditure or contribution is to be made unless § 441b(a) either is repealed or declared invalid by a court of competent jurisdiction. Accordingly, Bondurant was authorized to retain a law firm for the purpose of initiating an appropriate action on behalf of the company.[2]
 
 
 3
 Soon after passage of the shareholders' resolution, the company filed a complaint in the United States District Court for the Middle District of Georgia for a declaratory judgment determining the constitutionality of section 441b(a). The named plaintiffs included Athens and Bondurant, both in his capacity as president of the company and his individual capacity as a qualified voter. On behalf of Athens, the complaint alleged that section 441b(a) interferes with the company's rights under the first and fifth amendments. Not only is it asserted that section 441b(a) inhibits the company's freedom to speak politically and is overbroad in its prohibition of contributions and expenditures in federal elections, but it is also alleged that the statute arbitrarily discriminates between corporations, banks, and unions on the one hand, and natural persons and other organizations on the other. By virtue of this discrimination, Athens maintains that the statute dilutes its political voice. On behalf of Bondurant, the complaint asserts that the Act impinges upon his right as a voter to receive political information from corporate sources relating to the relative qualifications of candidates for federal office.
 
 
 4
 Because the complaint raised several constitutional challenges to the FECA, appellants asked the district court to invoke the expedited procedures embodied in 2 U.S.C. § 437h and to certify the issues directly to the en banc court of appeals. The district court, however, refused to expedite the proceedings. Instead it dismissed the complaint on jurisdictional grounds, holding that neither the company nor Bondurant presented a justiciable case or controversy within the meaning of Article III of the Constitution. The court rejected Athens' claim of Article III jurisdiction because the challenged statute does not interfere with the company's business of manufacturing and selling architectural millwork and selling building materials. In support of its position the court noted that prior to the July 1981 resolution, Athens never expressed any desire to enter the political arena. In addition, Athens was found to be seeking an advisory opinion because the company had no intention of breaking the law. Under the terms of the shareholders' resolution, no contributions or expenditures may be made so long as section 441b(a) remains in effect. With respect to Bondurant's claim, the court found no justiciable case or controversy because Bondurant remains "free to independently expend his personal funds, including dividends from the corporate plaintiff without limitation." From this dismissal, appellants filed a timely notice of appeal.
 
 II
 
 5
 When Congress enacted the FECA, it was wary of the constitutional ramifications of its action. As a result, certain procedures were incorporated into the Act that were designed to facilitate prompt review by the United States Supreme Court of any constitutional challenges to the legislation. 120 Cong.Rec. 10,562 (1974) (remarks of Sen. Buckley); 120 Cong.Rec. 35,140 (1974) (remarks of Rep. Frenzel). One of these procedures for expedited review appears in section 437h and provides in part:
 
 
 6
 The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act. The district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc.
 
 
 7
 2 U.S.C. § 437h(a). Section 437h provides further that any decision rendered by the court of appeals en banc is reviewable by direct appeal to the Supreme Court. Id. § 437h(b). Moreover, both the courts of appeals and the Supreme Court are directed to expedite the disposition of all issues certified pursuant to the statute. Id. § 437h(c).
 
 
 8
 In order to be eligible to invoke the expedited procedures of section 437h, a plaintiff must fall within one of the three classes of plaintiffs enumerated in the statute. Bread Political Action Committee v. FEC, 455 U.S. 577, 102 S.Ct. 1235, 71 L.Ed.2d 432 (1982). Thus, the only plaintiffs who may certify questions challenging the validity of the FECA to a court of appeals en banc are the FEC, the national committee of any political party, or an individual eligible to vote in a presidential election. Id.; 2 U.S.C. § 437h. As a corporation, Athens is unable to certify its constitutional challenges pursuant to the statute. Athens, however, may challenge section 441b of the FECA under the federal question jurisdiction granted federal courts in 28 U.S.C. § 1331 so long as the company satisfies the "usual" standing requirements. Bread, supra, 102 S.Ct. at 1240. Bondurant, on the other hand, is an individual voter, and as such is qualified to invoke expedited review under section 437h.
 
 
 9
 The Court's literal construction of section 437h(a) in Bread was buttressed by the clear language of the statute as well as the practical considerations involved in calling circuit judges away from their normal caseloads for expedited en banc hearings. 455 U.S. at 581; 102 S.Ct. at 1238. Similar practicalities also prompted the requirement that plaintiffs acting under section 437h satisfy the minimum standing requirements embodied in Article III of the Constitution. In California Medical Association v. FEC, 453 U.S. 182, 101 S.Ct. 2712, 69 L.Ed.2d 567 (1981), the Court rejected the view of the FEC that section 437h was subject to rampant abuse, arguing that "(t)he unusual procedures embodied in this section are, at the very least, circumscribed by the constitutional limitations on the jurisdiction of federal courts." 453 U.S. at 193 n. 14, 101 S.Ct. at 2719 n. 14.[3] The Court went on to conclude that one of the many Article III limitations imposed on a party acting under section 437h is the requirement of standing. Id. This requirement was restated again in Bread: "Thus, § 437h affords its unique system of expedited review to three carefully chosen classes of persons who might meet the minimum standing requirements of Article III." 455 U.S. at 581; 102 S.Ct. at 1238; e.g., International Association of Machinists & Aerospace Workers v. FEC, 678 F.2d 1092, 1097-99 (D.C.Cir.1982) (en banc) (per curiam).[4]
 
 
 10
 Accordingly, to invoke section 437h review a party must be a proper plaintiff as defined in the statute and must have sufficient standing to satisfy the case and controversy requirement of Article III. As discussed above, Athens is not a proper plaintiff and may not certify its challenges to the court of appeals en banc. Nor may the company remain in this suit as it travels to the court of appeals en banc. 678 F.2d at 1098 (dismissing a union from a suit brought under section 437h but permitting individual voter plaintiffs to continue the suit). However, because Athens may wish to raise its challenges through normal procedures for declaratory relief, we must review the district court's ruling that the company failed to raise a justiciable claim. Bondurant, on the other hand, is a proper plaintiff under section 437h. Nevertheless, he too must satisfy the individual standing requirements necessary to support federal court jurisdiction consistent with Article III.
 
 III
 
 11
 For the most part, traditional standing analysis governs our evaluation of appellants' standing claims. In Bread, the Supreme Court indicated that "minimum standing requirements" must be satisfied by qualified plaintiffs acting under section 437h. Although Bread fails to explain what standing satisfies these minimum requirements, in Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), the Court defined what it termed the "irreducible minimum" standing necessary to invoke the jurisdiction of a federal court. That irreducible minimum includes proof of both individualized "actual injury"[5] and a "fairly traceable" connection between the claimed injury and the challenged action so that a favorable verdict will redress the injury.[6] 102 S.Ct. at 758; ALCU v. Rabun County Chamber of Commerce, Inc., 678 F.2d 1379, 1384 (11th Cir. 1982).
 
 
 12
 Both Athens and Bondurant allege that threshold standing requirements are satisfied on the basis of a threat of prosecution theory. If the company were to begin its proposed program of contributions and expenditures, it would be subject to the civil and criminal sanctions embodied in the FECA. See 2 U.S.C. § 437g. Similarly, as an officer of the corporation, Bondurant would be subject to the same penalties. See 2 U.S.C. § 441b(a); 2 U.S.C. § 437g(d)(1) (A).[7] The company therefore asserts that its claim of standing squares directly with the standing implicitly recognized in First National Bank of Boston v. Bellotti, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978).
 
 
 13
 In Bellotti, two national banks and three business corporations sought a declaratory judgment determining the constitutionality of a Massachusetts criminal statute. The statute prohibited certain expenditures by banks and corporations for the purpose of influencing the vote on referendum proposals. Each of the corporate plaintiffs wanted to make financial contributions to publicize their views on a proposed state constitutional amendment involving the imposition of a graduated income tax. They were informed, however, that such contributions would result in prosecution under the challenged statute. 435 U.S. at 769, 98 S.Ct. at 1412. Although the Supreme Judicial Court for the State of Massachusetts upheld the statute, plaintiffs appealed the decision to the Supreme Court, arguing that the statute violated their first amendment right to engage freely in political speech. In evaluating the justiciability of the claim, the Court focused on the issue of mootness rather than standing.[8] 435 U.S. at 774-75, 98 S.Ct. at 1414-1415. Nevertheless, the anticipatory nature of the claim was acknowledged in the Court's reference to "the threat of prosecution" as opposed to any actual injury. Id. Thus, Athens maintains that because it is faced with the same threat of prosecution, it should have the same standing as the banks and corporate entities in Bellotti.
 
 
 14
 The district court rejected the analogy to Bellotti primarily because the Massachusetts statute imposed only criminal sanctions while the FECA imposes both criminal and civil sanctions. The court also attempted to minimize the threat of criminal prosecution by noting that appellants could spend less than $2,000 of corporate funds in violation of § 441b(a), expose themselves to civil penalties and create a "real controversy." We are unpersuaded by this reasoning. Appellants should not be required to expose themselves to prosecution to secure the desired relief so long as they have "alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder ...." Babbitt v. United Farm Workers National Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979); accord Steffel v. Thompson, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); Doe v. Bolton, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 34 L.Ed.2d 201 (1973); Let's Help Florida v. McCrary, 621 F.2d 195, 198 (5th Cir. 1980), cert. denied, 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982).
 
 
 15
 The shareholder's resolution passed in July 1981 evinces Athens' intent to participate directly in the political dialogue of federal elections and section 441b(a)'s prohibition of such direct participation arguably impedes the company's first amendment right of free speech. Bellotti, supra; see also Consolidated Edison Co. v. Public Service Commission, 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980). There also is little doubt that a favorable declaratory judgment would allow the company to make its expenditures and contribution and afford an adequate remedy. The only difficult issue is whether a credible threat of prosecution exists so long as the resolution conditions political expenditures and contributions on repeal of the statute or a declaration of its unconstitutionality. It is uncontroverted that if Athens were to go forward with its proposal, both the company and Bondurant would be subject to criminal and civil prosecution. Moreover, we acknowledge that the threat of criminal prosecution is very real as evidenced by the commendable zeal with which the Attorney General and the FEC approach their enforcement duties.[9] We therefore conclude that the threat of prosecution is not "imaginative or speculative" so as to render any decision by the court an advisory opinion. Indeed, as the Supreme Court recognized in Steffel v. Thompson, "it is not necessary that (appellant) first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." 415 U.S. at 459, 94 S.Ct. at 1215 (citing Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); see also Clements v. Flashing, --- U.S. ----, ----, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982) ("(A)ppellees have alleged in a precise manner that, but for the sanctions of the statute they seek to challenge, they would engage in the very acts that would trigger the enforcement of the statute.").
 
 IV
 
 16
 Under the above analysis, both Athens and Bondurant have standing to seek a declaratory judgment under normal procedures because both are subject to the same threat of prosecution for violations of section 441b(a). The next question is whether Bondurant has the requisite standing to expedite review on the basis of his threatened prosecution as corporate president, or whether he must rely solely upon his standing as a voter who is deprived of political information from corporations concerning federal elections. Clearly, Bondurant alleges standing in his capacity as a voter, asserting that he is denied access to all points of view in federal elections because of section 441b(a)'s prohibition on direct expenditures and contributions by corporations etc. The problem which arises when standing is asserted in such a generalized context, however, is the difficulty of demonstrating the "distinct and palpable injury" necessary to sustain a claim of individualized actual or threatened injury. Valley Forge, supra, 102 S.Ct. at 760 (citations omitted). But even putting aside the "distinct and palpable injury" requirement for the moment, Bondurant failed to allege how section 441b(a) denies him access to the political views of corporations. This deficiency occurs because the harshness of the prohibition on direct contributions and expenditures incorporated in section 441b(a) is alleviated somewhat by section 441b(b), which permits the use of general treasury funds for the establishment, administration, and solicitation of contributions for a segregated fund to be used for political purposes. 2 U.S.C. § 441b(b)(2)(C). Such segregated funds are administered by political action committees and can be used by corporations to make their political views known through committee contributions and expenditures. See Pipefitters Local Union 562 v. United States, 407 U.S. 385, 420, 431 n. 42, 92 S.Ct. 2247, 2267, 2272 n. 42, 33 L.Ed.2d 11 (1972). Indeed, an FEC release dated July 17, 1981, evidences that 1251 public corporations, 577 trade, membership, and health organizations, 303 labor organizations, and 64 corporations without stock have formed committees for this very purpose. Brief for Appellee FEC, (Appendix). Thus, even viewing Bondurant's allegations in a most favorable light, he fails to demonstrate how the challenged statute significantly impedes corporations from making their political views known. Moreover, even if we were to assume that the flow of politically oriented corporate information would increase significantly if corporations could make direct, as opposed to indirect, contributions and expenditures, Bondurant's alleged injury is indistinguishable from that of any other voter. His claim of "voter standing," therefore, is untenable. See Valley Forge, supra; United States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 94 S.Ct. 2962, 41 L.Ed.2d 706 (1974); Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923).
 
 
 17
 The real threat of actual injury in this case is the threat of prosecution which arises out of Athens' desire to contribute and expend funds directly from the corporate treasury in lieu of a segregated fund. We therefore must determine whether an individual plaintiff can invoke the expedited procedures of section 437h by alleging standing in a capacity other than a voter. In other words, can Bondurant allege standing as a president of a corporation subject to a threat of prosecution and still claim the benefit of the expedited review afforded individual voters?
 
 
 18
 The United States Court of Appeals for the District of Columbia recently addressed this issue and refused to limit expedited review "to plaintiffs who put in issue their First Amendment rights qua voters." Instead, the court stated:
 
 
 19
 Martin Tractor (Co. v. FEC, 460 F.Supp. 1017 (D.D.C.1978) ) apart, we find no support for the Commission's position that section 437h(a) qualifies voters to raise constitutional issues only in relation to their rights as voters. Neither the language of the statute (any eligible voter, all constitutional questions) nor its legislative history suggests an interpretation so constricted. We note further that the Commission's view is difficult to reconcile with California Medical Ass'n v. FEC, (453 U.S. 182) 101 S.Ct. 2712 (69 L.Ed.2d 567) (1981), in which the Supreme Court adjudicated a section 437h challenge to a provision of the Act regulating trade association activity. In short, we reject the FEC's severely limited voter standing delineation, disapprove Martin Tractor to the extent it adopted the Commission's view, and hold that the plaintiffs who are "individuals eligible to vote" in federal elections have statutory standing to invoke the section 437h certification procedure. See California Medical Ass'n v. FEC, 101 S.Ct. at 2717 n. 6 (1981); Buckley v. Valeo, 424 U.S. 1, 12, 96 S.Ct. 612, 631, 46 L.Ed.2d 659 (1976).
 
 
 20
 International Machinists, supra, 678 F.2d at 1098. We find this reasoning persuasive and adopt it as our own. Because we are satisfied that Bondurant has Article III standing by virtue of the threat of prosecution, and that he is an individual eligible to vote, we conclude that he is qualified to invoke the expedited procedures of section 437h.
 
 
 21
 Having satisfied his individual standing requirements, we hold further that he may raise the claims of the corporate plaintiff which challenge the constitutionality of section 441b(a). Unlike standing, which is an element of the constitutional requirement of "case or controversy," In re Weaver, 632 F.2d 461, 462 n. 6 (5th Cir. 1980), the general disfavor of jus tertii claims is a prudential limitation of a non-constitutional dimension, which is designed simply "to limit access to the federal courts to those litigants best suited to assert a particular claim." International Machinists, supra, 678 F.2d at 1099 (quoting Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979).).[10] Here, Bondurant is in as good a position as the corporate plaintiff to assert the particular challenges to the statute's constitutionality. As President of the corporation, he is subject to the same threat of criminal and civil penalties and therefore has equal incentive to litigate all of the issues raised in the complaint. Thus, we join the D.C. Circuit in recognizing that Congress has not evidenced any desire to trucate the presentation of parties entitled to expedite review. 678 F.2d at 1099. We note further that our certification of most all of the issues raised by appellant's complaint is consistent with Congress' direction that we take all steps possible to expedite review of such claims. See 2 U.S.C. § 437h(c).
 
 
 22
 We, however, do make one caveat to certification of the issues raised by appellants in that we do not certify the challenges made with respect to national banks and labor unions. In FEC v. Lance, 635 F.2d 1132 (5th Cir.) (en banc), cert. denied, 453 U.S. 917, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981) (Lance II) the former Fifth Circuit sitting en banc evaluated that portion of section 441b making it unlawful for a national bank to make loans or to permit overdrafts in connection with an election and out of the ordinary course of business. 635 F.2d at 1141. In narrowly limiting standing, the court noted that section 441b "is a series of discrete, separable prohibitions," and that standing should be recognized only to the extent that a plaintiff has "such a personal stake" in the outcome so "as to assure that concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends for illumination of difficult ... questions." 635 F.2d at 1140 (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).). Similarly, we narrow the standing of appellant Bondurant by refusing to allow him to argue for invalidation of the entire statute.[11] Although he is in a good position to make arguments for the corporations, he lacks the ability to adequately represent the challenges of labor unions qua unions and banks qua banks. This type of prudential limitation together with the minimum standing requirements authorized in Bread should preclude any abuse of the expedited procedures of section 437h.
 
 V
 
 23
 Having determined that Bondurant presents a justiciable claim and is qualified to invoke certification procedures, we have two options. We either can remand the case to the district court with directions to conduct additional fact finding and certify the issues directly to the court of appeals en banc, or we can certify the issues directly. We choose the latter. See FEC v. Lance, 617 F.2d 365 (5th Cir. 1980) (Lance I).
 
 
 24
 Although certification is improper when resolution of the issues requires a fully developed factual record, California Medical Association v. FEC, 453 U.S. 182, 194 n. 14, 101 S.Ct. 2712, 2719 n. 14, 69 L.Ed.2d 567 (1981), we are convinced that the facts necessary to resolve the issues raised by appellants are legislative as opposed to adjudicative. As such they are as easily presented to the court of appeals en banc as to the district court. At this point, a remand to the district court would serve only to delay proceedings contrary to the Congressional mandate that we expedite certified matters "to the greatest possible extent ...." 2 U.S.C. § 437h(c). Submission to the en banc court, on the other hand, is consistent with the prompt review anticipated by Congress.[12]
 
 
 25
 Thus, we reverse the district court's finding of nonjusticiability with respect to both Athens and Bondurant. However, we direct that only Bondurant be allowed to continue the action to the court of appeals en banc. Because Bondurant satisfies both the constitutional and statutory requirements necessary to invoke expedited review, and his standing to raise the issues relating to Athens, we certify the following issues directly to the en banc Court of Appeals:
 
 
 26
 (1) Whether 2 U.S.C. § 441b(a) violates the First Amendment to the Constitution and is, therefore, invalid in that it prohibits the plaintiffs from making any direct political contributions from corporate funds of the Athens Lumber Company, Incorporated, directly to candidates for federal office.
 
 
 27
 (2) Whether 2 U.S.C. § 441b(a) violates the First Amendment to the Constitution and is, therefore, invalid and unenforceable against plaintiffs in that it absolutely prohibits the plaintiffs from making any expenditures of corporate funds, independent of the campaign of any candidate and regardless of amount, for newspaper, radio or television advertising to advocate the election or defeat of a specifically identified candidate for federal office.
 
 
 28
 (3) Whether 2 U.S.C. § 441b(a) violates the First Amendment to the Constitution and is, therefore, invalid and unenforceable against plaintiffs in that it prohibits the plaintiffs from making any expenditures of corporate funds, independent of the campaign of any candidate, to pay the cost of preparing, printing and distributing letters advocating the election or defeat of specifically identified candidates for federal office to be included as inserts in the monthly bills mailed by the corporate plaintiff to its customers, the envelopes bearing the orders or checks mailed by the corporate plaintiff to its suppliers, or in other mailings made by or at the expense of the corporate plaintiff.
 
 
 29
 (4) Whether the provisions of 2 U.S.C. § 441b(a), together with the provisions of 2 U.S.C. § 431(9)(B)(i), discriminate arbitrarily and unreasonably in violation of the First and Fifth Amendments between corporations engaged in businesses other than publication of newspapers and magazines, on the one hand, and corporations engaged in the publication of newspapers and magazines, on the other, by prohibiting corporations in the former category from making any contributions or expenditures in connection with any elections to federal office, while expressly permitting corporations that publish newspapers and magazines to make 'expenditures' of corporate funds to endorse, publicize the views of, and advocate the election and defeat of specifically identified candidates for public office.
 
 
 30
 (5) Whether the provisions of 2 U.S.C. § 441b(a) discriminate arbitrarily in violation of the First and Fifth Amendments between corporations, on the one hand, and natural persons and organizations that are not corporations, on the other, by:
 
 
 31
 (A) absolutely prohibiting corporations from making a direct contribution of money directly to a candidate for federal office, or the campaign of a candidate for federal office, while permitting natural persons and organizations that are not national banks, corporations or unions, to give up to $1,000 directly to candidates for federal office or to their campaigns; and
 
 
 32
 (B) absolutely prohibiting the plaintiff corporation, and other corporations from making any expenditures of corporate funds, independent of the campaign of a candidate for federal office, in any amount, when natural persons and other organizations are permitted to spend unlimited amounts to promote the election or defeat of specifically identified candidates.
 
 
 33
 (6) Whether the provisions of 2 U.S.C. § 441b(a) prohibiting contributions or expenditures by plaintiff corporation 'in connection with' any election for federal office are unconstitutionally vague under the First and Fifth Amendments.
 
 
 34
 (7) Whether 21 U.S.C. § 441b(a) is invalid under the First Amendment because it prohibits corporations other than the Athens Lumber Company, Incorporated, and national banks and labor unions from making any expenditure of corporate funds to advocate the election or defeat of candidates for elective federal officers, thereby depriving the individual plaintiff, as a qualified voter, of his right to hear all points of view regarding the qualifications of such candidates, including the views of corporations, national banks and labor unions.
 
 
 35
 (8) Whether 2 U.S.C. § 441b(a) violates the First Amendment to the Constitution because it prohibits the expenditure of corporate funds to publish or communicate to the electorate truthful statements concerning the qualification of specifically named candidates for election to federal offices when such expenditures are made "in connection with an election," or for the purpose of influencing the outcome of such elections.
 
 
 36
 SUBMITTED TO COURT OF APPEALS EN BANC.
 
 
 37
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 
 38
 Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, and CLARK, Circuit Judges.
 
 BY THE COURT:
 
 39
 Based upon a vote of a majority of circuit judges in regular active service, and pursuant to our discretionary authority under Fed. R. App. P. 35, it is ORDERED that this case be considered by the Court en banc, with oral argument.
 
 
 40
 The clerk will set a briefing schedule.
 
 
 
 *
 Honorable Charles R. Scott, U.S. District Judge for the Middle District of Florida, sitting by designation
 
 
 [1]
 It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or for any corporation whatever, or any labor organization, to make a contribution or expenditure in connection with any election at which presidential and vice presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person knowingly to accept or receive any contribution prohibited by this section, or any officer or any director or any corporation or any national bank or any officer of any labor organization to consent to any contribution or expenditure by the corporation, national bank, or labor organization, as the case may be prohibited by this section
 2 U.S.C. § 441b(a).
 
 
 [2]
 After recognizing that the policies of the federal government significantly impact the company, the shareholders of Athens resolved that:
 (1) The President of the Company is hereby authorized to expend a maximum of $10,000 through December 31, 1984 to support the election to national office of those persons whom he believes to be best qualified and who will best serve the people of the United States, and the interests of the Company, its employees, shareholders and customers; such candidates may include candidates for election to the United States House of Representatives, the United States Senate, and President or Vice President of the United States or member of the Electoral College to be nominated or elected at any primary, general or special election or political convention at which such candidates are to be nominated or elected held during 1981 through 1984.
 (2) No contribution or other gift of money directly to a candidate or a campaign of a candidate shall exceed $100 per candidate or campaign, without the prior approval of the Board of Directors.
 (3) At least 50% of the fund shall be expended by the Company, independently of the campaign of any candidates for public office, on newspaper, radio, and television advertisements endorsing, promoting or opposing the election of specifically identified candidates to federal office.
 (4) The President is authorized to include, at the expense of the Company, messages endorsing the positions of and urging the election of specifically identified candidates for federal office, in monthly statements regularly mailed by the Company to its customers and in letters mailed by the Company to its suppliers and persons whom the President may designate.
 (5) No contributions or expenditures shall be made for political purposes, either from the special fund provided for in subparagraph 1 above, or from any other funds of the Company, until (a) 2 U.S.C. § 441b(a) is either repealed or declared invalid by a court of competent jurisdiction, and (b) the Company receives an opinion of counsel that the proposed expenditure or contribution does not violate any other valid provision of federal or state law, or any valid regulation of the Federal Election Commission or other regulatory agency.
 (6) The President is hereby authorized to employ Trotter, Bondurant, Miller & Hishon to represent the Company and the President in bringing any appropriate suit on behalf of the Company under 2 U.S.C. § 437h(a), and such other statute as may be appropriate seeking a determination of the validity of 2 U.S.C., § 441b(a) by a court of competent jurisdiction.
 Record, vol. I at 22-23.
 
 
 [3]
 Accord Buckley v. Valeo, 424 U.S. 1, 11, 96 S.Ct. 612, 630, 46 L.Ed.2d 659 (1976) (per curiam) ("At the outset we must determine whether the case before us presents a 'case or controversy' within the meaning of Article III"); Clark v. Valeo, 559 F.2d 642, 646 n. 2 (D.C.Cir.) (en banc), aff'd sub nom., Clark v. Kimmitt, 431 U.S. 950, 97 S.Ct. 2667, 53 L.Ed.2d 267 (1977) ("A District Judge requested to make certification under § 437h should be free to dismiss for want of jurisdiction, or to permit that question to be decided by this court en banc ....")
 
 
 [4]
 Notwithstanding the Court's recognition of a standing requirement, appellants urge that in enacting section 437h, Congress intended to confer standing on qualified voters thereby creating a legal right to challenge the constitutionality of the FECA. In essence, appellants maintain that Congress provided the "injury in fact" element of standing by conferring on voters the right to sue when they would be unable to sue in the absence of the statute. See Linda R. S. v. Richard D., 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148 n. 3, 35 L.Ed.2d 536 (1973). In support of this proposition we are referred to RITE-Research Improves the Environment, Inc. v. Costle, 650 F.2d 1312 (5th Cir. 1981) which upheld this proposition with respect to citizens' suits pursuant to section 505 of the Federal Water Pollution Control Act, 33 U.S.C. § 1365. In RITE the former Fifth Circuit recognized that
 (w)hile every lawsuit which receives judicial review on the merits must fall within the scope of Article III of the Constitution, it is a matter of black letter law that Article III does not limit congressional power to define categories of individuals as parties sufficiently aggrieved by a particular governmental action to warrant a statutory right to sue.
 650 F.2d at 1320; accord National Treasury Employees Union v. Campbell, 654 F.2d 784, 789 (D.C.Cir.1981); L. Tribe, American Constitutional Law 80 (1978). As a further example of this position appellants cite Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) which involved Black testers who posed as home purchasers for the sole purpose of collecting evidence of unlawful racial steering practices. Despite the fact that the testers fully expected to receive false information, they were granted standing on the basis of section 804(d) of the Fair Housing Act, 42 U.S.C. § 3604(d), which "establishes an enforceable right to truthful information concerning the availability of housing ...." 455 U.S. at 373; 102 S.Ct. at 1121.
 Without questioning Congress' ability to create a statutory right and to confer standing on particular individuals to enforce that right, we find that section 437h is not such a statute. Section 437h does not create a cause of action for enforcing a statutory right. Instead section 437h simply confers standing on certain classes of plaintiffs to invoke the expedited procedures incorporated in the statute. See 120 Cong.Rec. 10562 (1974) (remarks of Sen. Buckley) ("It (§ 437h) merely provides for the expeditious review of the constitutional questions I have raised").
 
 
 [5]
 Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); see Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975) ("distinct and palpable injury"); Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962) ("personal stake in the outcome")
 
 
 [6]
 Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978); Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977); Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976)
 
 
 [7]
 2 U.S.C. § 437g(d)(1)(A) provides:
 Any person who knowingly and willfully commits a violation of any provision of this Act which involves the making, receiving, or reporting of any contribution or expenditure aggregating $2,000 or more during a calendar year shall be fined, or imprisoned for not more than one year, or both. The amount of this fine shall not exceed the greater of $25,000 or 300 percent of any contribution or expenditure involved in such violation.
 See also 2 U.S.C. § 437g(a)(6).
 
 
 [8]
 The issue of mootness arose because the case did not reach the court until after the tax referendum was defeated. 435 U.S. at 774, 98 S.Ct. at 1414
 
 
 [9]
 See, e.g., FEC v. Lance, 617 F.2d 365 (5th Cir. 1980), on submission en banc, 635 F.2d 1132 (5th Cir.), cert. denied, 453 U.S. 917, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981); United States v. Chestnut, 533 F.2d 40, 50, 51 n. 12 (2d Cir.), cert. denied, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 93 (1976); United States v. Boyle, 482 F.2d 755 (D.C.Cir.), cert. denied, 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973); United States v. Clifford, 409 F.Supp. 1070, 1072 (E.D.N.Y.1976). See generally M. Stans, Terrors of Justice, 24-29 (1978)
 
 
 [10]
 In International Machinists the D.C. Circuit cites a number of decisions in which individual plaintiffs were permitted to assert the rights of third parties: Carey v. Population Services, Int'l., 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); Singleton v. Wulff, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). 678 F.2d at 1099
 
 
 [11]
 The FECA contains a severability clause so that if part of the statute is invalidated by the court of appeals en banc, the remaining provisions will not be affected. 2 U.S.C. § 454
 
 
 [12]
 Thus far the progression of these proceedings has been far from expeditious. Appellant's original complaint was filed on July 27, 1981. On September 29, 1981, the FEC was afforded an extension of time for filing its answer. The district court's order granting defendant's motion to dismiss was not granted until February 9, 1982. Only now, after more than a full year of litigation, is the case finally sent to the court of appeals en banc for determination on the merits