SOUTH OGDEN CVS STORE,
INC., Plaintiff,

v.

Gordon M. AMBACH et al., Defendants.

No. 79 Civ. 2607 (WCC).

United States District Court,
S. D. New York.

June 12, 1980.

Davis, Polk & Wardwell, New York City, for plaintiff; Richard E. Nolan, Bruce A. Baird, New York City, of counsel.

Robert D. Stone, Albany, N.Y., for defendants; Donald O. Meserve, Albany, N.Y., of counsel.

OPINION AND ORDER

CONNER, District Judge:

This is an action for injunctive and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1983. Plaintiff is a retail drug, health and beauty aid store in Buffalo, New York, registered as a licensed pharmacy under New York Education Law § 6806. Defendants are members of the Board of Regents of the State University of New York, charged with supervision of pharmacies under New York Education Law § 6506; the Commissioner of Education of the State of New York, who administers the practice of the profession of pharmacy under the direction of the Board of Regents; and the Executive

Secretary of the New York State Board of Pharmacy, who enforces the regulations of the Board of Regents and of the Commissioner relating to the practice of pharmacy in New York State.

Plaintiff challenges defendants' finding of a violation of New York State Education Law Article 137 with respect to two advertisements for discounts at plaintiff's store, asserting that the advertisements in question are protected commercial speech under the First Amendment.

The case is before the Court on plaintiff's motion for summary judgment and defendants' cross-motion for summary judgment and motions to dismiss the action for lack of proper venue under 28 U.S.C. § 1391 or, in the alternative, for change of venue under 28 U.S.C. § 1404(a).

*Factual Background*

The facts are not in dispute. In 1976 and 1977, plaintiff conducted two advertising campaigns to help it compete more effectively with other retail drugstores in the Buffalo area. In the first campaign, plaintiff posted signs in its store and distributed circulars which stated "Senior Citizens Prescription Plan, 10% extra savings on all prescriptions for anyone over 60" without indicating on either the signs or the handout the normal prices from which the discount would be taken. In the second, plaintiff published newspaper advertisements with a coupon stating: "$1.00 off with this coupon on any one prescription that is not currently being filled at CVS."

As to both campaigns, plaintiff states, and defendants do not deny, that information as to normal prices could have been obtained by a telephone call to the store; that plaintiff prominently posted, pursuant to New York Education Law § 6826, prices of the 150 most widely prescribed drugs in the pharmacy at its store, and informed customers on the posted sign that the price for any other prescription could be obtained on request; and that it would not have been practical to print the normal prices for the thousands of different prescription drugs sold by plaintiff in a newspaper advertisement or on a handout or sign.

Plaintiff's store was inspected by the state on December 3, 1976 and December 29, 1977. On the first occasion, the inspector found that window signs in the pharmacy advertising the 10% senior citizens' discount and a newspaper advertisement containing the "$1.00 off for new prescriptions" coupon were in violation of the state pharmacy regulations quoted below. On the second occasion, the inspector found that application forms for the 10% senior citizens' discount in the pharmacy were a violation of the regulations. Plaintiff subsequently received notice that a committee of the New York State Board of Pharmacy would conduct a hearing on February 13, 1979 to determine whether violations had in fact occurred. The hearing was held as scheduled, and the Board of Pharmacy decided that the advertising in question did violate rules for pharmacies promulgated by the Board of Regents under Section 6506(9) of the New York Education Law, which provide, in relevant part:

"§ 29.1 *General provisions for all professions.*

(a) Unprofessional conduct shall be the conduct prohibited by this section. The provisions of these rules applicable to a particular profession may define additional acts or omissions as unprofessional conduct and may establish exceptions to these general prohibitions.

(b) Unprofessional conduct in the practice of any profession licensed or certified pursuant to title 8 of the Education Law shall include:

\*　　\*　　\*　　\*　　\*　　\*

(12) advertising or soliciting for patronage that is not in the public interest;

(i) Advertising or soliciting not in the public interest shall include but not be limited to advertising that:

(a) is false, fraudulent, deceptive, misleading, sensational or flamboyant;

\*　　\*　　\*　　\*　　\*　　\*

(e) *offers gratuitous services or discounts in connection with professional services; but this clause shall not be construed to relate to the negotiation*

*of fees between professionals and patients or clients, or to prohibit the rendering of professional services for which no fee is charged* ;

\* \* \* \* \* \*

(g) states or includes prices for professional services, except as provided for in clause (b) of subparagraph (ii) of this paragraph;

(ii) the following shall be deemed appropriate means of informing the public of the availability of professional services:

(a) informational advertising not contrary to the foregoing prohibitions; and

(b) the advertising in a newspaper, periodical or professional directory or on radio or television of fixed prices, or a stated range of prices, for specified routine professional services, provided that if there is an additional charge for related services which are an integral part of the overall service being provided by the licensee, the advertisement shall so state, and provided further that the advertisement indicates the period of time for which the advertised prices shall be in effect;"

and that:

"§ 29.7 *Special provisions for the profession of pharmacy.* (a) Unprofessional conduct in the practice of pharmacy shall include all conduct prohibited by sections 29.1 and 29.2 of this Part except as provided in this section, and shall also include the following:

(1) advertisements of the prices of prescription drugs which do not comply with the following provisions:

(i) the advertised price shall be in effect for a period of time stated in the advertisement;

(ii) *when the pricing policy of a pharmacy provides for a variation from any advertised price for a special group, such as senior citizens, the advertising may include one price which is applicable generally and another price which is applicable to the special group and which is so identified. Alternatively, the advertisement may state that the quoted prices are sub-*

*ject to a specific discount for individuals belonging to the special group* ;

(iii) when the advertising of prescription prices forms part of a larger advertisement which includes the offering of general merchandise, the advertising pertaining to prescription prices shall be separated physically, such as by a box, from the advertising pertaining to general merchandise;

(iv) nothing in this subdivision shall be construed to prevent the use in advertising of a statement to the effect that the price for which any prescription will be filled is available on request." Rules of the Board of Regents, Title 8, NYCRR (emphasis added).

As the Board interprets these rules, a pharmacy may advertise discounts, but only if the advertisement also states the price to which the discount is to be applied; plaintiff's advertisements, which offered an across-the-board percentage discount for senior citizens, or a dollar discount on any new prescription, did not state the normal price, and were thus found to be in violation of the rules. The Board of Pharmacy imposed a $50 fine, which plaintiff paid.

Plaintiff further states, and defendants do not deny, that future violations of the rules could lead to further disciplinary proceedings against plaintiff under New York Education Law §§ 6510 or 6809; that such proceedings could lead to the administration of penalties ranging from a warning to suspension or revocation of plaintiff's registration to operate a licensed pharmacy, and of plaintiff's pharmacists' individual licenses, see New York Education Law §§ 6511 and 6808; and that for this reason, plaintiff has discontinued the described advertising campaigns, which it would otherwise have continued.

*Discussion*

1. Venue and transfer

As an initial matter, the Court must consider whether venue is proper in this district, and whether, even if venue is proper, the Court should transfer the case to the Northern District of New York under 28 U.S.C. § 1404(a), as urged by defendants.

28 U.S.C. § 1391 provides, in relevant part, that:

> "(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law."

There is no dispute that some, but not all, of the defendants, here have their personal residences in the Southern District of New York; that the Board of Regents and the Commissioner of Education conduct business in Albany, New York, in the Northern District, where the rules in question were adopted; that the Board of Regents and the Commissioner also on certain occasions conduct business in New York City, in the Southern District of New York, and list official offices in both districts; that the Executive Secretary of the State Board of Pharmacy has an office in this district, and that the hearing in this case was held in the Executive Secretary's New York City offices. It is further not disputed that a challenge to certain pharmacy rules of the Board of Regents, *Carl's Drug Co. v. Lefkowitz*, No. 78 Civ. 565 (N.D.N.Y.), is pending before Judge Harold G. Munson in the Northern District.

With respect to whether venue is proper in this district, defendants argue that the residence of the state officials sued here is the district where they perform their official duties, and that that district is the Northern District alone, so that venue does not lie in this district.[1] As to their alternative motion for transfer under 28 U.S.C. § 1404, defendants admit that one of the factors usually weighed in such a determination, the convenience of witnesses, does not favor a transfer in this case, since there are no witnesses here, but argue that defendants' official residences in the Northern District and the pendency of the *Carl's Drug* action in that district suggest that the case should be transferred to that district.

Plaintiff contends that under Section 1391, when an agency or officials sued in their official capacities maintain more than one office in which a substantial amount of business is done, venue is proper in any district in which such an office is located, citing *Strait v. Laird*, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972). Plaintiff notes that in an analogous situation involving the New York Public Employment Relations Board in *Buffalo Teachers Federation, Inc. v. Helsby*, 426 F.Supp. 828 (S.D.N.Y.1976), the court ruled that venue was proper in the Southern District even though that Board's central headquarters was in Albany, when the Board maintained an official office in New York City and a significant portion of the Board's business was conducted in this district.[2]

Plaintiff also states that transfer under Section 1404 is inappropriate here in light of factors such as the convenience of the parties, location of sources of proof, estimated delay following transfer and plaintiff's choice of forum; and that the *Carl's*

---

1. Defendants further argue that the fact that they have been sued in their individual capacities does not make venue proper under 28 U.S.C. § 1392(a), which provides that "any civil action, not of a local nature, against defendants residing in different districts in the same State may be brought in any of such districts," since the complaint fails to state a claim against any defendant in an individual capacity. With respect to venue based on where the claim arose, they contend that the claim arose either in Albany in the Northern District, where the Board of Regents adopted the rules in question, or in Buffalo, in the Western District of New York, where the original violations occurred and where any future violation would occur. See note 2, *infra*.

2. Plaintiff also contends that venue is proper, here under Section 1392(a), since individual defendants' residences may be considered for venue purposes when officials are sued in both their individual and official capacities, citing *Sheffield v. Texas*, 411 F.Supp. 709 (N.D.Texas 1976), for instance, in an action suing an official under the doctrine of *Ex parte Young*. Plaintiff further contends that the claim arose, at least in substantial part, in this district, since only two events—the inspection and the Board ruling—have significance for venue purposes in this challenge to the rules, and since one of those events occurred in this district.

Because the Court finds that the first ground asserted by defendants and plaintiff is dispositive of the venue issue, see text above, it does not reach these issues.

*Drug* case pending in the Northern District raises factual and legal issues sufficiently different from those raised here to preclude transfer on grounds of judicial economy.

■ The Court finds that, for the reasons stated in the *Buffalo Teachers* case, venue is appropriate in this district based on the official residence of the state defendants. As in *Buffalo Teachers*, it is undisputed here that defendants maintain offices in this district. Defendants have not shown that they do not conduct at least a significant part of their pharmacy-related business in this district; to distinguish *Buffalo Teachers*, they must make some such showing, particularly where, as here, the hearing leading to a finding of violation was conducted in this district. Moreover, again as in *Buffalo Teachers*, defendants have made no showing here that policy considerations of preventing inconvenience to or harassment of state officials militate against a determination that defendants may properly be sued in this district. See also 1 Moore's *Federal Practice* ¶ 0.142[5.–1–2] (1979–80 Supp. at 95–96). Accordingly, defendants' motion to dismiss or transfer based on improper venue is denied.

In addition, for reasons similar to those stated in *Buffalo Teachers, supra,* the Court finds that a transfer of this case to the Northern District would not be appropriate, even though venue appears proper in that district as well. Defendants have made no showing that they will be inconvenienced by a trial of the case here; there are no witnesses whose residence might suggest a trial in the Northern District; all the documents necessary for a decision on the case are now before this Court, and this Court is able to reach the substantive questions presented immediately, while it would take at least some additional time to present a similar motion to the Northern District, so that convenience and court docket factors suggest a disposition here. Further, as plaintiff points out, the case currently pending before the Northern District is a challenge to Rule 29.1(b)(12)(i)(e) based on its inconsistency with Rule 29.7 and on its selective enforcement, and does not involve either the direct challenge to Rule 29.7 or the across-the-board discount advertising practice presented here, so that considerations of judicial efficiency do not in fact weigh in favor of a transfer. See *Interested Underwriters at Lloyds v. Dennis H. Finney,* No. 79 Civ. 4787 (S.D.N.Y., filed May 29, 1980) (Conner, J.); *Car-Freshner Corp. v. Auto Aid Mfg. Corp.,* 438 F.Supp. 82 (N.D.N.Y.1977) (§ 1404(a) factors). Defendants' motion for transfer under Section 1404(a) is, accordingly, also denied.

2. First Amendment claims

Since no issues of fact are in dispute, resolution of the First Amendment issues here rests on a determination of whether plaintiff's interest in disseminating these particular advertisements outweighs the state's interest in regulating advertising by pharmacists in this manner to prevent false, deceptive or misleading advertising from reaching the public. The Court concludes that in this instance, plaintiff's interest prevails.

In *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), the Supreme Court held that at least certain types of commercial speech were entitled to First Amendment protection, and found that a Virginia statute providing that any price advertising by a licensed pharmacist constituted unprofessional conduct violated the First Amendment rights of prescription drug consumers. In its analysis, the Court determined that the consumers' interest in receiving specific price information—information which, the Court noted, was of special interest to the poor, the sick, "and particularly the aged," *id.* at 763, 96 S.Ct. at 1826—and society's interest in maintaining the free flow of information, on which our free enterprise economy depends, *id.* at 765, 96 S.Ct. at 1827, outweighed the state's interest in promoting professionalism among pharmacists when the means chosen was an absolute ban on price advertising. The Court further noted that high professional standards among pharmacists were guaranteed by other state

regulations, *id.* at 768, 96 S.Ct. at 1828, and that the transactions proposed to be advertised were not in themselves illegal in any way (which, the Court suggested, might justify an otherwise illegal ban, citing *Pittsburgh Press Co. v. Human Relations Commission*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973)). "Time, place and manner" restrictions on commercial speech would continue to be appropriate, the Court stated, so long as such restrictions were content-neutral, served a significant governmental interest, and left open "ample alternative channels for communication" of the same information, *id.* at 771, 96 S.Ct. at 1830. Under this analysis, the state could, accordingly, continue to regulate to prevent false, deceptive or misleading advertising, *id.* at 771–72 and n.24, 775–81, 96 S.Ct. at 1830–1831 and n.24, 1832–35 (Stewart, J., concurring), while

"the greater objectivity and hardiness of commercial speech . . . may also make it appropriate to require that a commercial message appear in such a form, or include such additional information, warnings and disclaimers as are necessary to prevent its being deceptive,"

perhaps by means of prior restraints on such speech, *id.* at 772, n.24, 96 S.Ct. at 1830.

The Court has amplified its *Virginia State Board* decision in a series of subsequent opinions. In *Linmark Associates v. Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977), the Court reiterated its concern about restrictions on the free flow of information to consumers, *id.* at 96, 97 S.Ct. at 1620. In *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the Court held that First Amendment considerations similar to those expressed in *Virginia State Board* protected the truthful advertising of the price at which lawyers would render certain routine legal services. The Court noted again that advertising which is false, deceptive or misleading remains subject to restraint, and that in a market such as that for legal services, where consumers lack sophistication, advertisements as to quality of services or in-person solicitation of business might be subject to stricter restraint, and

"some limited supplementation, by way of warning or disclaimer or the like, might be required of even an advertisement of the kind ruled upon today so as to assure that the consumer is not misled."

*Id.* at 384, 97 S.Ct. at 2709.

In *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), the Court upheld sanctions against in-person solicitation of hospitalized accident victims by an attorney seeking to represent the victims in a personal injury action because the state's interest in maintaining the professionalism of lawyers and, in particular, preventing overreaching or assertion of fraudulent claims, outweighed any First Amendment interest appellant might have in his conduct.

Finally, in *Friedman v. Rogers*, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979), the Court found that advertisement of an optometrist's trade name was not entitled to the same protection as that afforded to price advertising in *Virginia State Board* and *Bates*, first, because a trade name has no intrinsic price or quality meaning, and thus lends itself readily to manipulative or deceptive practices such as variations in personnel between stores of the same trade name, or creation of apparent competition between jointly-owned stores having different trade names; second, because the record showed just such a history of harmful practices by trade name optometrists in the state of Texas; and third, because the Texas statute's limitation on trade name advertising did not extend to prohibit or limit the type or amount of informational advertising—*i. e.*, advertising of services offered and the price of such services—which plaintiff could communicate to the public.

The speech at issue here appears to fall within the range of speech protected by *Virginia State Board* and its progeny for several reasons.

First, the information sought to be advertised is price information, as in *Vir-*

*ginia State Board* and *Bates*, and specifically, prescription price information of particular concern to the aged (the senior citizen discount) and to those of low income or income reduced by sickness, see *Virginia State Board, supra*. This is not, as in *Friedman*, information with "no intrinsic meaning," *id.* at 99 S.Ct. 895. Thus, for the reasons stated in *Virginia State Board*, this information is entitled to significant First Amendment protection.

Secondly, while the state's rules here do appear to be content-neutral, the state's recognized interest in protecting the public from misleading advertising does not appear to be strongly served by this particular regulation. Unlike the situation in *Friedman, supra*, there is no record here of fraudulent use of such advertising, or use to mislead consumers, either as to this particular drugstore or as to the three-store chain of which plaintiff is a member, see *Friedman, supra* at 99 S.Ct. 896–97. Nor is there any suggestion of in-person solicitation, as in *Ohralik, supra*; nor of appeals to irrational fears on the part of consumers, or of advertising practices appealing to consumers' lack of medical knowledge, such as testimonials, or of other promotional gimmicks unrelated to the professional services provided, see, *e. g., Talsky v. Department of Registration and Education*, 68 Ill.2d 579, 12 Ill.Dec. 550, 370 N.E.2d 173 (1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978) (free chicken and refreshments offered to chiropractic customers). The state thus cannot assert that the advertisements in question are part of a pattern of fraudulent conduct on the part of plaintiff. Nor can the state argue with force that the absence of complete price information in the advertisements makes the advertising inherently misleading. The Court notes that the information which the state would require plaintiff to include in the advertisements—complete information as to the

price of every prescription drug offered at plaintiff's store—is readily available to consumers by reviewing those prices which do appear in the newspaper advertisements or flyers in question, see Exhibits A and B to plaintiff's motion for summary judgment; by telephoning the store; by examining the sign prominently placed in the store; or by asking store personnel. The Court further notes, again, that this is price information, a subject well within the ken of most consumers, not, as in *Bates, supra*, a subject such as the quality of legal services as to which most consumers lack sophistication.

Thirdly, the limitation on pharmacy advertising in the way suggested by the state effectively precludes advertisement of an across-the-board discount to a particular group, since for practical purposes it will never be possible to run an advertisement listing prices of all items offered for sale in a pharmacy. The rules in question thus fail to leave open any alternative channel for communication of this particular type of price offering, see *Friedman, supra; Virginia State Board, supra*. This is a type of regulation particularly disfavored, see *Linmark, supra*. Moreover, the Court observes that, as in *Virginia State Board, supra*, other regulations imposed by the state—including the regulation as to posting of price signs in the store—may accomplish the ends sought to be promoted more effectively than the proposed ban on this type of advertising.

Finally, as in *Virginia State Board, supra*, the information which plaintiff seeks to communicate is not in itself illegal or harmful, but rather, serves "the health needs of the society," *Terry v. California State Board of Pharmacy*, 395 F.Supp. 94 (N.D. Cal.1975) (statutes prohibiting media advertising of discount prescription drug prices struck down).[3]

---

**3.** The state has not argued that the case is an appropriate one for application of the doctrine of abstention under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). This Court notes that

the language of the rules is clear and there is no dispute as to their meaning; that the state describes the rules in question as adopted to comply with *Virginia State Board* and *Bates*; that no action based on interpretation of the

In summary, the Court finds that the state rules, as interpreted and applied, have the effect of placing an absolute ban on advertisement of across-the-board discounts on prescription drugs to certain classes of consumers; that enforcement of such a rule violates plaintiff's rights under the First Amendment to disseminate its truthful commercial message; and that the rules are therefore invalid insofar as they preclude dissemination of such information. Plaintiff's motion for summary judgment is granted, and defendants' cross-motion is denied. Within fifteen days of the date of this Opinion and Order plaintiff shall submit a proposed judgment order on ten days' notice to defendants.

SO ORDERED.

rules is currently pending in state court; and that it is therefore unlikely that a state court interpretation of the rules might resolve the First Amendment issues presented here, so that

*Pullman* principles do not appear to suggest that a stay would be appropriate. See *Procunier v. Martinez,* 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974).