**MICHIGAN STATE CHAMBER OF COMMERCE, a Michigan non-profit corporation, individually and for its members; James Barret; Consumers Power Company, a Michigan corporation; The Detroit Edison Company, a Michigan corporation; and Michigan Consolidated Gas Company, a Michigan corporation, Plaintiffs,**

v.

**Richard H. AUSTIN, in his capacity as Secretary of State of the State of Michigan, Defendant.**

**Civ. A. No. 83–CV–2263–DT.**

United States District Court, E.D. Michigan, S.D.

Dec. 28, 1983.

---

John D. Pirich, Kirk D. Messmer, Miller, Canfield, Paddock & Stone, Lansing, Mich., for plaintiffs.

Michael J. Hodge, Gary P. Gordon, Asst. Attys. Gen., Lansing, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, Chief Judge.

A declaratory judgment complaint seeks to have certain provisions of the Michigan Campaign Financing and Practices Act, Public Act No. 388 of 1976, M.C.L.A. § 169.201 *et seq.*, declared unconstitutional. Jurisdiction is vested pursuant to 28 U.S.C. §§ 1331 and 2201. Plaintiff has moved for summary judgment, and defendant has moved for dismissal or, in the alternative, change of venue.

### I. BACKGROUND

In 1976, Michigan enacted the Michigan Campaign Financing and Practices Act ("Campaign Financing Act"). Section 54 of that act provides, *inter alia:*

(3) A corporation or joint stock company, whether incorporated under the laws of this or any other state or foreign country, except a corporation formed for political purposes, shall not make a contribution or provide volunteer personal services which services are excluded from the definition of a contribution pursuant to section 4(3)(a), in excess of $40,-000.00, to each ballot question committee for the qualification, passage, or defeat of a particular ballot question.

M.C.L.A. § 169.254(3). This provision allows corporations to make unlimited direct contributions to ballot questions (i.e., place their own ads in the media), but place a $40,000 limit on their contributions to ballot question committees.[1] The apparent purpose of this limitation is to prevent corporations from placing contributions to ballot questions campaigns through front organizations with misleading or less than descriptive names (e.g., Citizens for Jobs). Plaintiffs seek a declaration that such limitation on corporate expenditures is violative of the first and fourteenth amendments of the United States Constitution.

## II. DISCUSSION

### A. Venue

■ Defendant contends that this action should be transferred to the Western District of Michigan. Venue in this matter is controlled by 28 U.S.C. § 1391(b), which provides:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

Defendant asserts that Secretary of State Richard Austin officially resides in Lansing (in the Western District of Michigan), that the claim on this action arose at that official residence, and that venue is therefore only proper in the Western District.

### 1. Where The Claim Arose

Defendant argues that venue should rest in the Western District of Michigan because it is the "district ... in which the claim arose...." In support of this assertion, defendant notes that the principal office of the Secretary of State is in Lansing, and that enforcement of the Campaign Financing Act takes place primarily in Lansing. Determining the situs of a claim in a declaratory judgment action is not as simple as identifying the location of the alleged wrongdoer. In such a case it is possible that the claim could arise not only where the enforcers of an allegedly unconstitutional law reside, but also where that enforcement impacts. Because of this, some courts have held that actions such as this do not necessarily arise in any one discreet district. *Lamont v. Haig,* 590 F.2d 1124 (D.C.Cir.1978); *Florida Nursing Home Association v. Page,* 616 F.2d 1355 (5th Cir.1980), *rev'd on other grounds, Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Cheeseman v. Carey,* 485 F.Supp. 203 (S.D.N.Y.1980), *remanded with instructions to dismiss on other grounds,* 623 F.2d 1387 (2d Cir. 1980).[2]

With the possibility of a claim arising in several districts, courts must decide in which among the several plausible districts venue lies. In addressing this problem, the court in *Lamont v. Haig* stated:

> This practical orientation of Section 1391(b), then, counsels against adherence to mechanical standards in its application. Rather, where "the claim arose" should in our view be ascertained by advertence to events having operative significance in the case, and a common-sense appraisal of the implications of those events for accessibility to witnesses and records. And, though a proliferation of permissible forums is staunchly to

---

1. Ballot question committees are defined in Section 2 of the Act. M.C.L.A. § 169.202(2).

2. In *Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the U.S. Supreme Court declined to decide whether a claim could arise in more than one judicial district for purposes of 28 U.S.C. § 1391(b). However, the court did state that it is arguably acceptable that:

> [I]n the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim (footnotes omitted).

*Id.* at 185, 99 S.Ct. at 2717.

be avoided, it is evident that the often unfruitful pursuit of a single locality as the one and only district in which the claim arose is not needed to ensure the efficient conduct of the litigation. Not surprisingly, then, courts in some number have construed Section 1391(b) as conferring venue in a district where a substantial portion of the acts or omissions giving rise to the actions occurred, notwithstanding that venue might also lie in other districts. We endorse that interpretation wholeheartedly (footnotes omitted).

590 F.2d at 1134. Similarly, in *Florida Nursing* the court held that venue was proper in the district where a regulation impacted, even though the headquarters of the agency which issued the regulation was located in another district. In so holding, the court stated:

In any case, the court should not oppose the plaintiffs' choice of venue if the activities that transpired in the district where suit is brought were not insubstantial and the forum is a convenient one balancing the equities and fairness to each party.

616 F.2d at 1361.

In this case, all of the plaintiff utility companies and a majority of the members of the plaintiff Chamber of Commerce reside in the Eastern District of Michigan. It seems likely that the weight of impact of the disputed statute will fall principally in the Eastern District. Moreover, it would appear that "balancing the equities and fairness to each party", *id.*, the Eastern District is the more convenient forum for this action.[3] Thus, in that impact upon this district is not insubstantial, and in that this district is convenient for all parties, there is no reason to upset plaintiffs' choice of forum, and defendant's motion to transfer venue is denied.

### 2. Residence of Defendant

Under 28 U.S.C. § 1391(b), venue is proper in the judicial district where all the defendants reside. In this case, the parties agree that it is the Secretary of State's official residence, rather than his personal residence, which controls for purposes of determining venue. *Butterworth v. Hill,* 114 U.S. 128, 5 S.Ct. 796, 29 L.Ed. 119 (1885); 15 Wright & Miller, Federal Practice and Procedure § 3805 (1976). The parties apparently also agree that the traditional rule, at least with regard to suits against federal officials, is that there can only be one official residence. *Reuben H. Donnelley Co. v. F.T.C.,* 580 F.2d 264 (7th Cir.1978); *Cheeseman v. Carey,* 485 F.Supp. 203 (S.D.N.Y.1980); *Buffalo Teachers Federation v. Helsby,* 426 F.Supp. 828 (S.D.N.Y.1976). However, when suit is brought against a state official, rather than a federal official, a number of courts have held that it is possible for the official to reside in more than one federal judicial district within that state. *Florida Nursing, supra; Buffalo Teachers Federation, supra; Cheeseman v. Carey, supra; Smith Ogden CVS Store, Inc. v. Ambach,* 493 F.Supp. 374 (S.D.N.Y. 1980). In articulating the rationale for such a rule, the court in *Cheeseman v. Carey* stated:

[T]he potential inconvenience to federal officials resulting from a rule recognizing multiple official residences is far greater than for state officials, who can never be deemed to reside in another state. Moreover, the fact that a plaintiff can generally sue federal officials in the district in which the plaintiff resides, 28 U.S.C. § 1391(e), makes a multiple-residence rule far less necessary in cases against federal officials. Therefore, in suits against state officials, courts should be willing to consider whether any defendant has more than one official

**3.** Lansing is almost equally distant from the courthouse for the Western District of Michigan (Grand Rapids) and the courthouse for this district. Thus, either district would be equally convenient for defendant, and the Eastern District would be significantly more convenient for plaintiffs.

residence for purposes of the particular litigation.

485 F.Supp. at 207.

In this case it is conceded that the Secretary of State maintains offices and conducts business in the Eastern District of Michigan. The parties made conflicting assertions regarding the extent of the Secretary's activities in the Eastern District of Michigan, both in terms of general activities and activities relating to the Campaign Financing Act; however, the parties did not support these assertions with proofs. Thus, even if I had not found that the claim arose in this district, it may well have been demonstrated that the Secretary maintained an official residence in this district, and that venue was proper on that basis.

### B. *Motion to Dismiss*

█ Defendant moves for dismissal claiming this court is without jurisdiction due to a lack of case or controversy. At some time subsequent to the November 2, 1982, general elections, plaintiff utility companies came under investigation by the Michigan Secretary of State for alleged violations of the Campaign Financing Act. The Secretary's investigation was terminated in March of 1983, in response to the execution of a conciliation agreement by which the utilities agreed to pay certain fees to the state and to comply with the $40,000 contribution limitation for a period of four years. Based upon this, defendant argues that plaintiffs have agreed that they will abide by the law in its present form for the next four years, and therefore, lack standing to bring this action.

I find this argument unavailing for several reasons. First, the conciliation agreement of March, 1983, incorporated by reference an attached statement which contained the following language:

Throughout the campaign, each corporate Respondent [i.e., Plaintiff Utilities] attempted to adhere strictly to the requirements of Section 54(3) notwithstanding the question perceived by Respondents as to the constitutional validity of this statutory section raised in the decision of the United States Supreme Court in the *Citizens Against Rent Control/Coalition for Fair Housing v. City of Berkeley* [454 U.S. 290], 102 S Ct 434 [70 L.Ed.2d 492] [sic] * * *.

Respondents intend to initiate appropriate actions to obtain administrative or judicial interpretations of the constitutional and statutory issues involved in this matter.

This language indicates that the agreement to comply with the present law was arguably subject to judicial or administrative resolution of the constitutional questions at issue. The Supreme Court has held that, "For purposes of ruling on a motion to dismiss for want of standing, [this court] must accept as true all material allegations of the complaint, and construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Thus, in this case I must assume that, despite the conciliation agreement, the utilities did not fully acquiesce in the application of the law in its present form, and therefore, did not destroy any existing case or controversy.

Moreover, even if plaintiff utility companies had bound themselves to comply with the present law, such would not prevent co-plaintiffs from challenging the law. Plaintiff Michigan State Chamber of Commerce is a non-profit corporation which represents the views of over 6,000 members. The complaint specifically alleges that some of the Chamber's members are corporations which expect to contribute to ballot question committees. The Supreme Court has recognized that associations may, in certain circumstances, assert the rights of their members. *N.A.A.C.P. v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *U.S. v. Students Challenging Regulatory Agency Procedures,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Thus, even if plaintiff utility companies lacked standing, this action could properly be brought by plaintiff Chamber of Commerce alone. Therefore, I find that there is an active case or contro-

versy presented in this case, and defendant's motion to dismiss is denied.

### C. Motion For Summary Judgment

■ Plaintiff moves for summary judgment claiming that Section 54 of the Campaign Financing Act, on its face, violates the first and fourteenth amendments, and that no material questions of fact exist with regard to such violation. Little need be said about this motion.

The Supreme Court has faced questions concerning limitations on campaign contributions several times in recent years. In *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), the Court held that a total ban on corporate contributions to ballot question campaigns was unconstitutional. In so holding, the plurality opinion of the Court stated:

> Appellee advances a number of arguments in support of his view that these interests are endangered by corporate participation in discussion of a referendum issue. They hinge upon the assumption that such participation would exert an undue influence on the outcome of a referendum vote, and—in the end—destroy the confidence of the people in the democratic process and the integrity of government. According to appellee, corporations are wealthy and powerful and their views may drown out other points of view. *If appellee's arguments were supported by record or legislative findings that corporate advocacy threatened imminently to undermine democratic processes, thereby denigrating rather than serving First Amendment interests, these arguments would merit our consideration. Cf. Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, [89 S.Ct. 1794, 23 L.Ed.2d 371] (1969). But there has been no showing that the relative voice of corporations has been overwhelming or even significant in influencing referenda in Massachusetts, or that there has been any threat to the confidence of the citizenry in government. *Cf. Wood v. Georgia*,

370 U.S. 375, 388 [82 S.Ct. 1364, 1371, 8 L.Ed.2d 569] (1962) (emphasis added, footnote omitted).

*Id.* at 789–790, 98 S.Ct. at 1422–1423. In *Citizens Against Rent Control/Coalition For Fair Housing v. Berkeley*, 454 U.S. 290, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981), the Supreme Court held that a municipal ordinance which imposed a $250.00 limitation on any contribution to ballot question committees was unconstitutional. Again, in so holding, Chief Justice Burger's plurality opinion, *id.* at 299, 102 S.Ct. at 439, as well as the concurring opinions of Justice Marshall, *id.* at 301, 102 S.Ct. at 439–40, and Justices Blackmun and O'Connor, *id.* at 303, 102 S.Ct. at 440–41, clearly state that the ordinance was unconstitutional only because the record before the Court did not contain evidence sufficient to demonstrate that such limitation was necessary to prevent an undermining of the confidence of the citizenry in government.

Here the State asserts that it will amass evidence to demonstrate that large corporate contributions to ballot question committees do threaten to undermine the citizens' confidence in government. The teachings of *Bellotti* and *Berkeley* indicate that in order for contribution limitations to pass constitutional muster, the state must generate an evidentiary record which clearly demonstrates the compelling need for such limitations. During hearings on this matter the State requested that it be given six months in which to conduct a study to determine the effect of corporate contributions upon ballot question elections and the election process. It would be premature to grant summary judgment without allowing defendant an opportunity to collect evidence and attempt to climb the hill set before it by the Supreme Court's recent decisions. Thus, plaintiffs' motion for summary judgment will be taken under advisement in order to afford the parties an opportunity to collect evidence and present it at an evidentiary hearing to be scheduled by this court.

An appropriate order may be submitted.