**MICHIGAN STATE CHAMBER OF COMMERCE, a Michigan non-profit corporation, individually and for its members; E. James Barrett; Consumers Power Company, a Michigan corporation; the Detroit Edison Company, a Michigan corporation; and Michigan Consolidated Gas Company, a Michigan corporation, Plaintiffs,**

v.

**Richard H. AUSTIN, in his capacity as Secretary of State of the State of Michigan, Defendant.**

**Civ. A. No. 83–2263.**

United States District Court, E.D. Michigan, S.D.

July 11, 1986.

John D. Pirich, Kirk D. Messmer, Miller, Canfield, Paddock & Stone, Lansing, Mich., for plaintiffs.

Richard P. Gartner, Gary P. Gordon, Asst. Attys. Gen., Lansing, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Plaintiffs seek judgment declaring Section 54(3) of the Michigan Campaign Finance Act, Mich.Comp.Laws § 169.254(3), a facial violation of the first and fourteenth amendments and enjoining its enforcement. The statute provides:

(3) A corporation or joint stock company, whether incorporated under the laws of this or any other state or foreign country, except a corporation formed for political purposes, shall not make a contribution or provide volunteer personal services ... in excess of $40,000 to each ballot question committee for the qualification, passage, or defeat of a particular ballot question.

(4) Nothing in this section shall preclude a corporation or joint stock company from making an independent expenditure in any amount for the qualification, passage, or defeat of a ballot question. A corporation making an independent expenditure under this subsection shall be considered a ballot question committee for the purposes of this act.

Mich.Comp.Laws § 169.254(3), (4).

I have jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201.

Consumers Power Company, The Detroit Edison Company, Michigan Consolidated Gas Company, and Michigan State Chamber of Commerce and its President filed this action on June 9, 1983 claiming that each corporation wanted to contribute more than $40,000 to ballot question committees opposed to an initiative sponsored by the Michigan Citizens Lobby. On December 28, 1983, 577 F.Supp. 651, and again on July 9, 1984, I determined that the parties presented a justiciable controversy; but,

after discovering that the Michigan Citizens Lobby proposal failed to qualify for the November, 1984 ballot, I dismissed the action for lack of a justiciable controversy. The United States Court of Appeals for the Sixth Circuit remanded the case for further proceedings after finding "a controversy 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Michigan State Chamber of Commerce v. Austin,* 788 F.2d 1178, 1185 (1986) (*quoting Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969)). Plaintiffs move for summary judgment.

The Secretary claims that Michigan's contribution limit is necessary to preserve voter confidence and electoral integrity.[1] He alleges that Michigan utility companies spent over $7.3 million during the 1982 ballot question campaign to defeat Proposals D and G. Acting on the advice of political consultants who determined that voters distrust utilities, the companies masked their involvement by purchasing political advertisements, which must bear the purchaser's name,[2] with ballot question committees appealingly named "[Area] Citizens for Michigan Jobs and Energy" but actually controlled by the utilities. The campaign succeeded both in defeating Proposals D and G, and in hiding the companies' involvement.

Limitations on contributions to ballot question committees implicate primarily associational freedoms and therefore infringe protected first amendment activity less severely than do expenditure limitations, which directly curtail freedom of expression. *See Buckley v. Valeo,* 424 U.S. 1, 14–23, 96 S.Ct. 612, 632–37, 46 L.Ed.2d 659 (1976); *Let's Help Florida v. McCrary,* 621 F.2d 195, 199 (5th Cir.1980), *aff'd mem.,* 454 U.S. 1130, 102 S.Ct. 985, 71 L.Ed.2d 284 (1982). Nevertheless, contribution limitations do trigger first amend-

**1.** The allegations contained in the text are a compendium of those found in Defendant's Brief in Opposition to Plaintiffs' Motion for Summary Judgment, June 20, 1986 at 20–36. The allegations are based, in part, on surveys

commissioned by the utility companies and attached to the brief as Exhibits A and D.

**2.** *See* Mich.Comp.Laws § 169.247.

ment protection, *see, e.g., First National Bank of Boston v. Bellotti*, 435 U.S. 765, 776–86, 98 S.Ct. 1407, 1415–21, 55 L.Ed.2d 707 (1978); *Buckley*, 424 U.S. at 20–23, 96 S.Ct. at 635–37; *Let's Help Florida*, 621 F.2d at 199; *C & C Plywood Corp. v. Hanson*, 583 F.2d 421, 423–25 (9th Cir. 1978), and are valid only "if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms." *Buckley*, 424 U.S. at 25, 96 S.Ct. at 637. *See also Let's Help Florida*, 621 F.2d at 199.

■ States may regulate associations designed to mask massive corporate involvement in ballot question campaigns. The first amendment does not protect deceptive or misleading political activity. *See Tomei v. Finley*, 512 F.Supp. 695, 697–99 (N.D. Ill.1981). *Cf. Bates v. State Bar of Arizona*, 433 U.S. 350, 381–84, 97 S.Ct. 2691, 2707–2709, 53 L.Ed.2d 810 (1977) (false or misleading commercial advertising entitled to little or no first amendment protection); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771–72 & n.24, 96 S.Ct. 1817, 1830–31 n.24, 48 L.Ed.2d 346 (1976) (same). Neither does it privilege political activity likely to undermine voter confidence or electoral integrity. *Cf. First National Bank of Boston*, 435 U.S. at 789, 98 S.Ct. at 1422 (suggesting that State may regulate political activity that demonstrably threatens to "destroy the confidence of the people in the democratic process and the integrity of the government.").

■ Michigan's statute, however, limits not only artfully masked, potentially misleading activity, but also open and innocent association. The Secretary will enforce the statute against even those corporations willing to disclose their own names in political advertising.[3] Such a corporation may not associate with any other person to hire a political consulting firm to devise and execute a ballot question campaign if it contributes more than $40,000 to the effort. Even the Secretary's counsel admits that Michigan may not constitutionally limit such association.[4]

■ Thus, the constitutional vice of Michigan's statute is its overbreadth in simultaneously limiting both covert and open associations. The Secretary argues that plaintiffs intend to engage in only covert association and therefore urges me to ignore the statute's impact on legitimate association. This I may not do because a substantially overbroad statute that infringes the first amendment freedom of association is, no matter what the situation of the challenging parties, completely void:

It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. . . . Litigants, therefore, are permitted to challenge a statute not because their own rights of free ex-

---

3. Defendant's Brief Regarding Corporate Joint Independent Expenditures, June 27, 1986 at 4–6.

4. The Secretary's counsel, Mr. Gartner, candidly admitted this in colloquy with the Court:

MR. GARTNER: Corporations, under the Campaign Finance Act, can individually make independent expenditures of an unlimited amount, and they have to identify their names on the ads.

With respect to joint activity . . . [o]nly under a very limited situation, very limited, could a corporation ban together with other corporations and make joint expenditures [in excess of $40,000 even though disclosing their names on the advertisements] . . . .

THE COURT: So that might infringe on the First Amendment right to associate, might it not?

MR. GARTNER: It raises that issue, certainly.

THE COURT: What compelling need is there to regulate that kind of conduct if these corporations are out in the open fully disclosing who they are?

MR. GARTNER: Well, it raises—I would agree with you that, with respect to that scenario, perhaps the statute—and I'm just throwing this out to the Court—with that limited construction is a violation of the First Amendment.

Transcript of Proceedings, July 1, 1986 at 18–19.

pression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.

... Overbreadth attacks have also been allowed where the Court thought rights of association were ensnared in statutes which, by their broad sweep, might result in burdening innocent associations.

... [A]ny enforcement of a statute thus placed at issue is totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.

*Broadrick v. Oklahoma,* 413 U.S. 601, 611–613, 93 S.Ct. 2908, 2915–17, 37 L.Ed.2d 830 (1973). *See also, NAACP v. Button,* 371 U.S. 415, 432–433, 83 S.Ct. 328, 337–38, 9 L.Ed.2d 405 (1963); *Democratic Party of the United States v. National Conservative Political Action Committee,* 578 F.Supp. 797, 814, 837–839 (E.D.Pa.1983) (Three Judge Panel), *aff'd in relevant part sub nom. Federal Election Commission v. National Conservative Political Action Committee,* 469 U.S. 1206, 105 S.Ct. 1459, 84 L.Ed.2d 455 (1985). *See generally* Note, *The First Amendment Overbreadth Doctrine,* 83 Harv.L.Rev. 844 (1970).

Section 54(3) of the Michigan Campaign Finance Act, Mich.Comp.Laws § 169.254(3), is substantially overbroad and therefore void as a violation of the first and fourteenth amendments. Accordingly, plaintiffs' motion for summary judgment is GRANTED.

An appropriate order may be submitted.