MICHIGAN STATE CHAMBER OF COMMERCE, a Michigan nonprofit corporation, individually and for its members; E. James Barrett; Consumers Power Company, a Michigan corporation; the Detroit Edison Company, a Michigan corporation; and Michigan Consolidated Gas Company, a Michigan corporation, Plaintiffs–Appellees,

v.

Richard A. AUSTIN, in his capacity as Secretary of State of the State of Michigan, Defendant–Appellant.

No. 86–1875.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 27, 1987.

Decided Nov. 4, 1987.

Rehearing Denied Dec. 8, 1987.

Richard P. Gartner, Asst. Atty. Gen. (argued), Gary P. Gordon, Lansing, Mich., for defendant-appellant.

John D. Pirich (argued), Kirk D. Messmer, Lansing, Mich., for plaintiffs-appellees.

Before MARTIN and BOGGS, Circuit Judges, and WISEMAN,* Chief Judge.

WISEMAN, Chief Judge.

Defendant-appellant Richard A. Austin (Austin), Secretary of State of the State of Michigan, appeals from the district court's order granting plaintiffs-appellees' (Plaintiffs) motion for summary judgment. Plaintiffs' motion sought a declaratory judgment that § 54(3) of the Michigan Campaign Finance Act (Act), *Mich.Comp. Laws* § 169.254(3) (Supp.1987), on its face, violates the first and fourteenth amendments. The district court granted Plaintiffs' motion and permanently enjoined Austin from enforcing § 54(3), holding that § 54(3) "is substantially overbroad and therefore void as a violation of the first and

* The Honorable Thomas A. Wiseman, Jr., Chief United States District Judge for the Middle District of Tennessee, sitting by designation.

fourteenth amendments." *Michigan State Chamber of Commerce v. Austin*, 637 F.Supp. 1192, 1195 (E.D.Mich.1986). On appeal, Austin argues that § 54(3) is not substantially overbroad. Alternatively, Austin argues that even if § 54(3) is overbroad on its face, the limiting construction he proposed to the district court removes any threat of deterrence to constitutionally protected association that § 54(3) poses. For the reasons stated below, we affirm the district court's judgment.

Plaintiffs initiated this lawsuit in June, 1983 alleging that they wanted to contribute greater than $40,000 to certain ballot question committees organized to oppose an initiative proposed by the Michigan Citizens Lobby. In September, 1983, Plaintiffs moved for summary judgment. The district court, relying on *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) and *Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley*, 454 U.S. 290, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981), took Plaintiffs' motion under advisement to afford Austin an opportunity to "generate an evidentiary record which clearly demonstrates the compelling need" for § 54(3)'s contribution limitations.

After depositions were taken and evidentiary material was filed with the district court, Plaintiffs renewed their motion for summary judgment. Before ruling on Plaintiffs' motion, however, the district court dismissed the action for failing to present a justiciable controversy. Plaintiffs appealed from the district court's order dismissing the action. Subsequently, a panel of this Court reversed the district court's judgment and remanded the case for further proceedings. *See Michigan State Chamber of Commerce v. Austin*, 788 F.2d 1178 (6th Cir.1986). On remand, the district court granted Plaintiffs' motion for summary judgment.

The principal issue presented by this appeal is whether, for any reason,[1] § 54(3) violates the first amendment. Section 54(3) limits corporate contributions to ballot question committees. Specifically, § 54(3) provides:

A corporation ... except a corporation formed for political purposes, shall not make a contribution or provide volunteer personal services ... in excess of $40,-000.00, to each ballot question committee for the qualification, passage, or defeat of a particular ballot question.

*Mich.Comp.Laws* § 169.254(3)· (Supp. 1987).[2]

While the Act limits corporate *contributions* to ballot question committees, it does not limit the amount of independent, *direct expenditures* a corporation may make for the qualification, passage, or defeat of a ballot question. *Mich.Comp.Laws* § 169.-254(4). "It is only when contributions are made in concert with ... others in the exercise of the right of association" that they are limited by § 54(3). *Citizens Against Rent Control*, 454 U.S. at 296 [102 S.Ct. at 437]. Section 54(3), therefore, restrains the right of Michigan corporations to associate with others and to pool their money through contributions in an effort to present their collective point of view on a particular ballot measure. As the Supreme Court noted in *Citizens Against Rent Control*: "To place a Spartan limit—or indeed any limit—on individuals wishing to band together to advance their views on a ballot measure, while placing none on individuals acting alone, is clearly a restraint on the right of association." *Id.*

1. It is unclear whether the district court based its holding on the "overbreadth doctrine" defined in *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) or the "interest balancing test" defined in *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Regardless of which legal theory the district court relied on, however, we must affirm the district court's judgment if it is correct for any reason, including a reason the district court did not consider. *See Russ' Kwik Car*

*Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir.1985).

2. Section 54(5) of the Act makes knowing violation of § 54(3) a felony punishable "by a fine of not more than $5,000.00 or imprisoned for not more than 3 years, or both, [if the violator is an individual], and if the [violator] is other than an individual, the [violator] shall be fined not more than $10,000.00." *Mich.Comp.Laws* § 169.-254(5).

It is well settled that contribution limitations like § 54(3), although subject to less exacting judicial scrutiny than limitations on direct expenditures, clearly implicate first amendment rights of political association and expression. *See Citizens Against Rent Control,* 454 U.S. at 294–99, 102 S.Ct. at 436–39; *Buckley v. Valeo,* 424 U.S. 1, 21–22, 96 S.Ct. 612, 635–36, 46 L.Ed.2d 659, 689–90 (1976); *Let's Help Florida v. McCrary,* 621 F.2d 195, 199 (5th Cir.1980), *aff'd mem.,* 454 U.S. 1130, 102 S.Ct. 985, 71 L.Ed.2d 284 (1982). A state may limit contributions to ballot question committees only if it "demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms." *Buckley,* 424 U.S. at 25, 96 S.Ct. at 638; *Let's Help Florida,* 621 F.2d at 199. The fact that § 54(3) limits corporate, as opposed to individual, contributions does not diminish the importance of the associational rights it restrains. "[A] state [can] not prohibit corporations any more than it [can] preclude individuals from making contributions ... advocating views on ballot measures." *Citizens Against Rent Control,* 454 U.S. at 297–98, 102 S.Ct. at 438 (summarizing the holding in *Bellotti, supra*).

■ In *Buckley v. Valeo* the Supreme Court considered the constitutionality of federal limits on contributions to political candidates and their campaign committees. The Court noted that "group association is protected [by the first amendment] because it enhances '[e]ffective advocacy.' " *Buckley,* 424 U.S. at 65, 96 S.Ct. at 657 (quoting *NAACP v. Alabama,* 357 U.S. 449, 460, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958)). The Court recognized that "[t]he right to join together 'for the advancement of beliefs and ideas,' ... is diluted if it does not include the right to pool money through contributions." *Id.* 424 U.S. at 65, 96 S.Ct. at 657. In light of the importance of the right to associate and to pool resources through contributions, the Court "identified a *single narrow exception* to the rule that limits on political activity [are] contrary to the First Amendment." *Citizens Against Rent Control,* 454 U.S. at 296–97, 102 S.Ct. at 437 (emphasis added). That

exception recognizes that the sole governmental interest which justifies restrictions on political contributions is the need to prevent actual or perceived *quid pro quo* corruption between large financial contributors and a political candidate. *See Buckley,* 424 U.S. at 26–27, 96 S.Ct. at 638–39; *Let's Help Florida,* 621 F.2d at 199, *quoted with approval in Citizens Against Rent Control,* 454 U.S. at 297, 102 S.Ct. at 438.

Because the statute involved in *Buckley* limited contributions to candidates or their campaign committees, the Court concluded that the need to prevent actual or perceived *quid pro quo* corruption was present and Congress could legitimately limit contributions in an effort to prevent erosion of confidence in our system of representative government *Buckley,* 424 U.S. at 26–27, 96 S.Ct. at 638–39. The Court, therefore, upheld the federal limits on contributions to candidates and their committees. *Buckley,* however, does not support limits on contributions to ballot question committees. As the Court noted in *Bellotti:* "Referenda are held on issues, not candidates for political office. The risk of corruption perceived in cases involving candidate elections, simply is not present in a popular vote on a public issue." *Bellotti,* 435 U.S. at 790, 98 S.Ct. at 1423 (citations omitted). *See also C & C Plywood Corp. v. Hanson,* 583 F.2d 421, 425 (9th Cir.1978).

■ Austin nevertheless argues that § 54(3) serves other compelling governmental interests. Specifically, Austin argues that § 54(3) is necessary to preserve voter confidence in the ballot question process and to prevent corporations from deceiving the electorate as to the identity of those who support and oppose a particular ballot question. Like the contribution limitation in *Citizens Against Rent Control,* however, § 54(3) "does not advance a legitimate governmental interest significant enough to justify its infringement of First Amendment rights." *Citizens Against Rent Control,* 454 U.S. at 299, 102 S.Ct. at 439.

Section 54(3) is not necessary to protect the electorate form corporate deception.

As was the case in *Citizens Against Rent Control*, "there is no risk that [Michigan] voters will be in doubt as to the identity of those whose money supports or opposes a given ballot measure." *Id.* at 298, 102 S.Ct. at 438. The Act imposes strict disclosure requirements on ballot question committees. These disclosure requirements are sufficient to enable the public, prior to the election, to identify the sources of the committees' contributions as well as the uses to which those contributions have been put. *See Mich.Comp.Laws* §§ 169.-225(1), .226, .234(1), .235(1).[3] The public's interest in identifying the sources of support for and opposition to ballot measures, therefore, is well served by the Act's disclosure requirements and is not sufficient to justify § 54(3)'s limitations. *Citizens Against Rent Control*, 454 U.S. at 298–99, 102 S.Ct. at 438–39. Furthermore, Austin has been unable to point to any evidence in the record which suggests that § 54(3) is necessary to preserve voter confidence in the ballot question electoral process, or that large corporate contributions pose "any threat to the confidence of the citizenry in government." *Bellotti*, 435 U.S. at 790, 98 S.Ct. at 1423.

In sum, § 54(3) abridges important first amendment rights while failing to serve a sufficiently important state interest. Section 54(3), therefore, "plainly contravenes both the right of association and the speech guarantees of the First Amendment." *Citizens Against Rent Control*, 454 U.S. at 300, 102 S.Ct. at 439. Accordingly, we affirm the district court's judgment.

---

**3.** Section 25(1) of the Act requires all ballot question committees to file periodic campaign statements. *Mich.Comp.Laws* § 169.225(1). The campaign statements must include, among other things, the full name, address, date and amount contributed for every "person" who contributed a total of $20.01 or more during the period covered by the statement. *Id.* at § 169.-226(h). The term "person" is defined by the Act

as including businesses and corporations. *Id.* at § 169.211(1). Ballot question committees are required to file pre-election campaign statements not later than 11 days prior to the election. *Id.* at § 169.234(1). Ballot question committees must also file an annual campaign statement, unless they file a post-election campaign statement within 30 days of December 31 of the year in question. *Id.* at § 169.235(1).